# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROGER JOSEPH, JR., Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) **NO. 07-cv-11060** ) ) |
| vs. | ) ) |
| VIRGIN MOBILE USA, INC., DANIEL H. SCHULMAN, JONATHAN MARCHBANK, JOHN D. FEEHAN, JR., FRANCES BRANDON-FARROW, DOUGLAS B. LYNN, MARK POOLE, ROBERT SAMUELSON, L. KEVIN COX, THOMAS O. RYDER, KENNETH T. STEVENS, LEHMAN BROTHERS, MERRILL LYNCH & CO., BEAR, STEARNS & CO., INC., RAYMOND JAMES & ASSOC., INC., and THOMAS WEISEL PARTNERS, LLC, | ) CLASS ACTION COMPLAINT ) ) **JURY TRIAL DEMANDED** ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) ) |

Plaintiff, Roger Joseph, Jr. ("Plaintiff"), alleges the following based upon the investigation by Plaintiff's counsel, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Virgin Mobile USA, Inc. ("Virgin Mobile" or the "Company"), securities analysts' reports and advisories about the Company, and information readily available on the Internet, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a federal class action on behalf of purchasers of the common stock of Virgin Mobile, who purchased or otherwise acquired Virgin Mobile's common stock pursuant or traceable to the Company's Initial Public Offering on or about October 11, 2007 through November 15, 2007 (the "IPO" or the "Offering"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

2.      Virgin Mobile is a provider of wireless communications services, offering prepaid, or pay-as-you-go, services targeted at the youth market (ages 14-34).  The Company offers its products and services on a flat per-minute basis and on a monthly basis for specified quantities, or buckets, of minutes purchased in advance, in each case without requiring its customers to enter into long-term contracts or commitments.  The Company markets its products and services under the Virgin Mobile brand.

3.      On or about October 11, 2007, the Company conducted its IPO.  In connection with its IPO, the Company filed a Registration Statement and Prospectus (collectively referred to as the "Registration Statement") with the SEC.  The IPO was a financial success for the Company, as it raised $412.5 million by selling 27.5 million shares of stock to the public at a price of $15.00 per share.

4.      Then on November 15, 2007, the Company shocked investors when it announced its quarterly financial and operational results for the third quarter of 2007 (ended September 30, 2007).  For the quarter, the Company reported a net loss of $7.3 million, or ($0.15) per share, as compared to a net loss of $5.1 million, or ($0.10) per share, for the third quarter of 2006.

5.      On this news, shares of the Company's stock declined $1.54 per share, or over 10 percent, to close on November 16, 2007 at $9.19 per share, on unusually heavy trading volume.

The Company's stock continued to decline following this disclosure, and closed on November 29, 2007 at $7.25 per share, a cumulative loss of $7.75 per share, or over 51 percent of the value of the Company's shares at the time of its IPO just weeks earlier.

6.       The Complaint alleges that, in connection with the Company's IPO, the defendants failed to disclose or indicate the following:  (1) that the Company had already suffered an enlarged financial loss for the third quarter of 2007; (2) that the Company's expenses had significantly increased for the third quarter of 2007; (3) that the Company's subscriber growth trends had dramatically slowed; (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's Registration Statement was false and misleading at all relevant times.

7.       As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class Members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.       The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

9.       This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v).

10.      Venue is proper in this Judicial District pursuant to Section 22 of the Securities Act.  Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District.  Additionally, the Company's stock was marketed, and is actively traded on the New York Stock Exchange ("NYSE") in this Judicial District, and many of the defendant's

maintain executive offices in this Judicial District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, Roger Joseph, Jr., as set forth in the accompanying certification, incorporated by reference herein, purchased Virgin Mobile's common stock at artificially inflated prices pursuant to and traceable to the Company's IPO, and has been damaged thereby.

13.     Defendant Virgin Mobile is a Delaware corporation with its principal executive offices located at 10 Independence Boulevard, Warren, New Jersey.

14.     Defendant Daniel H. Schulman ("Schulman") was, at all relevant times, the Company's Chief Executive Officer ("CEO") and a member of the Board of Directors.

15.     Defendant Jonathan Marchbank ("Marchbank") was, at all relevant times, the Company's Chief Operating Officer.

16.     Defendant John D. Feehan, Jr. ("Feehan") was, at all relevant times, the Company's Chief Financial Officer ("CFO").

17.     Defendant Frances Brandon-Farrow ("Brandon-Farrow") was, at all relevant times, a member of the Company's Board of Directors.

18.     Defendant Douglas B. Lynn ("Lynn") was, at all relevant times, a member of the Company's Board of Directors.

19.     Defendant Mark Poole ("Poole") was, at all relevant times, a member of the Company's Board of Directors.

20.    Defendant Robert Samuelson ("Samuelson") was, at all relevant times, a member of the Company's Board of Directors.

21.    Defendant L. Kevin Cox ("Cox") was, at all relevant times, a member of the Company's Board of Directors, and of the Board's Audit Committee.

22.    Defendant Thomas O. Ryder ("Ryder") was, at all relevant times, a member of the Company's Board of Directors, and of the Board's Audit Committee.

23.    Defendant Kenneth T. Stevens ("Stevens") was, at all relevant times, a member of the Company's Board of Directors, and of the Board's Audit Committee.

24.    Defendants Schulman, Marchbank, Feehan, Brandon-Farrow, Lynn, Poole, Samuelson, Cox, Ryder and Stevens are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Virgin Mobile USA, Inc.'s quarterly reports, press releases, documents, and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  Each defendant was provided with copies of the Company's reports and press releases, documents alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

25.     Defendants Lehman Brothers ("Lehman"), Merrill Lynch & Co. ("Merrill Lynch"), Bear Sterns & Co. ("Bear Sterns"), Raymond James & Assoc., Inc. ("Raymond James") and Thomas Weisel Partners, LLC ("Thomas Weisel") are collectively referred to hereinafter as the "Underwriter Defendants."  The Underwriter Defendants served as financial advisors to the Company, and assisted in the preparation and distribution of Virgin Mobile's IPO materials and securities.

## SUBSTANTIVE ALLEGATIONS

### Background

26.     Virgin Mobile is a provider of wireless communications services, offering prepaid, or pay-as-you-go, services targeted at the youth market (ages 14-34).  The Company offers its products and services on a flat per-minute basis and on a monthly basis for specified quantities, or buckets, of minutes purchased in advance, in each case without requiring its customers to enter into long-term contracts or commitments.  The Company markets its products and services under the Virgin Mobile brand.

27.     On or about October 11, 2007, the Company conducted its IPO.  In connection with its IPO, the Company filed a Registration Statement and Prospectus (collectively referred to as the "Registration Statement") with the SEC.  The IPO was a financial success for the Company, as it raised $412.5 million by selling 27.5 million shares of stock to the public at a price of $15.00 per share.

28.     In connection with its IPO, on October 11, 2007, the Company issued a press release entitled "Virgin Mobile USA Prices Initial Public Offering."  Therein, the Company, in relevant part, stated:

> Virgin Mobile USA, Inc. announced today that its initial public offering of 27,500,000 shares of Class A common stock has been

priced at $15.00 per share. The shares are expected to begin trading on the New York Stock Exchange today, October 11, under the symbol "VM".

\* \* \*

Of the total 27,500,000 shares sold in the offering, 25,467,160 shares were sold by the company, while the remaining shares were sold by certain stockholders. In connection with the offering, a selling stockholder has granted to the underwriters a 30-day option to purchase up to an additional 4,125,000 shares to cover over-allotments.

Lehman Brothers was lead manager and book runner for the offering, with Merrill Lynch & Co. and Bear Stearns & Co acting as joint book-running managers.

### Materially False and Misleading
### Statements Made in the Registration Statement

29.     Regarding the Company's business operations, and how the Company was experiencing strong demand and consistent growth in subscribers, revenues and earnings, the Registration Statement, in relevant part, stated:

We are a leading national provider of wireless communications services, offering prepaid, or pay-as-you-go, services targeted at the youth market. Our customers are attracted to our products and services because of our flexible monthly terms, easy to understand pricing structures, stylish handsets offered at affordable prices and relevant mobile data and entertainment content. We believe that the appeal of our brand and products and services extends beyond our target audience and estimate that approximately half of our current customers are ages 35 and over. We offer our products and services on a flat per-minute basis and on a monthly basis for specified quantities, or buckets, of minutes purchased in advance—in each case without requiring our customers to enter into long-term contracts or commitments.

We were founded as a joint venture between Sprint Nextel and the Virgin Group and launched our service nationally in July 2002, reaching one million customers in November 2003, within eighteen months of our national launch. ***We have continued to grow our customer base rapidly and, as of December 31, 2006, we served approximately 4.57 million customers, which we***

7

*estimate represented approximately a 15% share of the pay-as-you-go market and a 19.0% increase over the 3.84 million customers we served as of December 31, 2005. As of June 30, 2007, we served approximately 4.83 million customers. Our revenues and net loss for the year ended December 31, 2006 were approximately $1.1 billion and $(36.7) million, respectively. Our revenues and net income for the six months ended June 30, 2007 were approximately $666.9 million and $26.5 million, respectively.* As of June 30, 2007 and December 31, 2006, our members' accumulated deficit was approximately $(614.4) million and $(643.9) million, respectively. [Emphasis added.]

30.    With regard to the Company's subscriber growth, the Registration Statement, in

relevant part, stated:

We were founded as a joint venture between Sprint Nextel and the Virgin Group and launched our service nationally in July 2002. *As of December 31, 2006, we served approximately 4.57 million customers, which we estimate represented approximately a 15% share of the pay-as-you-go market and a 19.0% increase over the 3.84 million customers we served as of December 31, 2005. As of June 30, 2007, we served approximately 4.83 million customers, which was a 24.8% increase over the 3.87 million customers we served as of June 30, 2006. This was a 5.7% increase over the 4.57 million customers as of December 31, 2006.* Historically, we have grown our business organically, but, subject to our existing and future contractual obligations, we may consider mergers, acquisitions and strategic investments from time to time that enable us to achieve greater scale, cost or technology advantages. [Emphasis added.]

31.    In detailing how the Company's growth opportunities would allow the Company

to continue to expand its business, the Registration Statement, in relevant part, stated:

We believe that two key factors distinguish us from many of our competitors: our focus on the youth and pay-as-you-go segments of the U.S. wireless market and our mobile virtual network operator, or MVNO, business model. Our focus on the youth and pay-as-you-go segments of the U.S. wireless market allows us to tailor our products and services, advertising, customer care, distribution network and overall operations to the needs and desires of our target market, which we believe is underserved by wireless providers. We control our customers' experience and all customer "touch points," including brand image, pricing, mobile content, marketing, distribution and customer care. *As an MVNO,*

*however, we do not own or operate a physical network, which frees us from related capital expenditures and allows us to focus our resources and compete effectively against the major national wireless providers in our target market.* [Emphasis added.]

32.    Regarding the Company's "competitive strengths," the Registration Statement, in relevant part, stated:

**Competitive Strengths**

We believe that the following key strengths enable us to compete effectively in the wireless telecommunications market:

*Differentiated Market Approach.*    We have been pioneers in the U.S. wireless industry, offering innovative, youth-oriented pay-as-you-go plans without long-term contracts or commitments. Our service plans, which include both flat per-minute rates and hybrid plans with monthly buckets of minutes purchased in advance, are attractive alternatives to traditional postpaid plans. Our stylish and affordable handsets and our voice and data service offerings are designed to make Virgin Mobile particularly appealing to the youth market.

*Strong Brand.    Virgin Mobile is the number one brand for prepaid wireless services in the United States in awareness and purchase consideration among 14-34 year-olds*, according to Gallagher Lee Brand Tracking (fourth quarter 2006), and was rated as one of the top ten "trendsetting" brands in any sector in the United States by the Cassandra Report in 2004. We believe that our customers identify with brands and products that reflect their values and our marketing efforts focus on leveraging the popular attributes of the Virgin brand: fun, style, good value and social responsibility. We have exclusive rights to use the Virgin Mobile brand through 2027 for mobile voice and data services in the United States, U.S. Virgin Islands and Puerto Rico through our trademark license agreement with the Virgin Group.

*Extensive and Efficient Distribution.*    Our nationwide distribution network is comprised of *130,000 third party retail stores that offer account replenishment, or Top-Up cards, including more than 35,000 retail locations that also sell our handsets*. We distribute our products through leading national retailers, including Wal-Mart, Best Buy, RadioShack and Target, and generally receive favorable product positioning in their retail locations. Our products are designed to require minimal sales assistance, which enables us to distribute them cost-effectively

9

through third party channels and eliminates the need to expend capital to build and operate our own retail stores.

***Award-winning Customer Service.*** Our award-winning customer service program, Virgin Mobile At Your Service, provides user-friendly and effective customer service through our call centers and our website. ***Our high quality of customer service helps us to retain customers. As a result, we believe that our churn is among the lowest in the prepaid segment of the wireless industry. We consistently receive high ratings in customer satisfaction surveys.*** In both 2006 and 2007, we were the sole recipient of the J.D. Power and Associates Award for wireless prepaid customer satisfaction.

***Capital Efficient Business.*** Our mobile virtual network operator, or MVNO, business model, easy-to-understand products and services, cost-efficient distribution channels and focused marketing strategy have made us one of the lowest cost operators in the wireless industry. ***As an MVNO, we have substantially lower capital expenditures than those of wireless service providers that own their networks.*** While we expect to continue to subsidize our handsets in order to acquire additional customers, we do not operate our own retail stores, which saves us substantial sales and distribution costs. In addition, we pay Sprint Nextel for wireless services only to the extent of our customers' usage. As a result, we have a highly variable cost structure, which we believe has allowed us to reach profitability faster than if we were to maintain our own network.

***Proven and Committed Management Team.*** ***We are led by a highly experienced management team, which has significant expertise in the telecommunications, Internet and e-commerce, media and entertainment, consumer products and retail industries.*** Many members of our management team have been with us since before our national launch and have been instrumental in developing and implementing our business model. [Emphasis added.]

33.    With regard to the Company's "business strategy," the Registration Statement, in relevant part, stated:

**Business Strategy**

We believe the following components of our business strategy will allow us to continue our growth and improve our profitability:

***Focus on Fast-growing Segments of U.S. Wireless Market.*** We focus on two fast-growing segments of the U.S. wireless market: youth and pay-as-you-go. We believe there is substantial demand in the United States for our straightforward and fun wireless communication services. According to the Yankee Group, in 2006, there were approximately 29.5 million pay-as-you-go wireless customers in the United States and such number is expected to grow to approximately 53.0 million by 2011, representing a 12.4% compound annual growth rate over the same period. ***We plan to continue to penetrate the youth segment and grow our market share by continuing to tailor our products, services and advertising message to this market, leveraging our brand through new and existing distribution channels and utilizing select youth-oriented media channels that specifically resonate with our target market***, such as MTV, Vice, Facebook.com, MySpace.com and outdoor billboards and postings in key trendsetting neighborhoods.

***Continue Product and Service Innovation.*** We have a proven ability to innovate and adapt to our customers' needs. For example, in 2006 we launched a suite of new service plans that were designed to be more attractive to higher-usage customers. These monthly bucket plans include anytime and night and weekend minutes without long-term contracts or commitments. At the same time, we launched mobile social networking and Sugar Mama, an innovative new program that enables our customers to earn minutes by viewing and rating advertisements online. ***We intend to continue our efforts to address our market's evolving needs and to offer innovative and popular products and services ahead of our competitors.***

***Enhance our Brand Strength.*** We aim ***to maintain and strengthen a vibrant brand image*** that resonates with our customers and distinguishes us from other wireless service providers. Our goal is to attract and retain customers through our youth-oriented marketing message and service offerings that are straightforward, flexible and a good value. For example, our marketing events in 2007 included the Virgin Festival by Virgin Mobile, a two-day event that drew approximately 72,000 fans to see major performing artists. We will continue to enhance our brand through targeted marketing, advertising, product packaging, point-of-sale materials and innovative services.

***Leverage Our Scale and Infrastructure to Drive Profitable Growth.*** As of June 30, 2007, in five years since our national launch, we had grown our customer base to approximately 4.83 million. ***We have built the infrastructure to support future growth in customers and usage while leveraging the advantages of our***

11

*predominantly variable cost structure.* As we continue to scale the business, *we expect our growing customer base to translate into improved cost economies without the need for substantial capital investment.* [Emphasis added.]

34.    The statements contained in ¶¶ 29 – 33 were materially false and misleading when made because defendants failed to disclose or indicate, in connection with the Company's IPO, the following:  (1) that the Company had already suffered an enlarged financial loss for the third quarter of 2007; (2) that the Company's expenses had significantly increased for the third quarter of 2007; (3) that the Company's subscriber growth trends had dramatically slowed; (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's Registration Statement was false and misleading at all relevant times.

**The Truth Begins to Emerge**

35.    On November 15, 2007, the Company shocked investors when it issued a press release entitled "Virgin Mobile USA, Inc. Reports Results for the Third Quarter and First Nine Months of 2007."  Therein, the Company, in relevant part, stated:

> Virgin Mobile USA (NYSE: VM), a leading national provider of wireless, pay-as-you-go communications services without annual contracts, today reported its financial and operational results for the third quarter and nine months ended September 30, 2007.
>
> * * *
>
> **Overview and Basis of Presentation**
>
> Unless explicitly stated as pro forma, the financial results presented in this release are the historical results of Virgin Mobile USA's former operating company, Virgin Mobile USA, LLC. Virgin Mobile USA, Inc. is a holding company formed for the purpose of an initial public offering, or IPO, that was completed on October 16, 2007. In connection with the IPO, the company, Virgin Mobile USA, LLC and certain other entities completed an internal reorganization. As part of the reorganization, Virgin Mobile USA LLC converted to a limited partnership and changed its name to Virgin Mobile USA L.P. (the "Operating Partnership"). On October 16, 2007, Virgin Mobile USA, Inc. and certain selling

stock holders sold 27,500,000 shares of Virgin Mobile USA, Inc. Class A common stock at $15.00 per share. The net proceeds from the IPO to the company were approximately $355.4 million after deducting underwriting commissions and discounts of $23.7 million, estimated offering expenses of $4.6 million. The company used $136 million of the IPO proceeds to pay Sprint Nextel for a portion of Sprint Nextel's limited liability company interests in Virgin Mobile USA, LLC that the company purchased in connection with the reorganization and IPO. The remaining net proceeds of $219.4 million were contributed to the Operating Partnership. Immediately following the IPO, the Operating Partnership used the proceeds to (1) repay $150 million of outstanding borrowings and $0.8 million of accrued interest under the senior secured credit facility and (2) repay $45 million of indebtedness and $0.6 million of accrued interest owed to Sprint Nextel under the subordinated secured revolving credit facility. Subsequent to the IPO, the Operating Partnership used the remaining net proceeds of approximately $23.1 million for general corporate purposes. As of September 30, 2007, Virgin Mobile USA, Inc. had not engaged in any business or other activities except in connection with its formation and the reorganization transactions described in its prospectus, dated October 10, 2007. Virgin Mobile USA is presenting its earnings per share on a pro forma basis to reflect its reorganization transactions related to the IPO, which took place after September 30,2007.

* * *

Adjusted EBITDA in the third quarter 2007 grew to $17.0 million, an increase of 3.9% compared to the same period in 2006. Third quarter 2006 Adjusted EBITDA included a benefit of $11.4 million due to the reversal of an accrual for a legal settlement. Excluding this one-time item, Adjusted EBITDA grew 240% from $5.0 million in the third quarter 2006 to $17.0 million in the third quarter 2007, as the result of Virgin Mobile USA's rapidly-increasing scale. Virgin Mobile USA's Adjusted EBITDA for the first nine months of 2007 increased by 26%, to $89.9 million, compared to the first nine months of 2006, with Adjusted EBITDA margin of 9.6% for the first nine months of 2007. Excluding the one-time item in 2006, Adjusted EBITDA rose 50% in the first 9 months of 2007 as compared to the same period in 2006. This primarily resulted from growth in customers and service revenue, as Virgin Mobile USA continued to realize the benefits of its increasing scale.

***Virgin Mobile USA reported a net loss for the third quarter 2007 of $7.3 million, compared to a net loss of $5.1 million for the***

*third quarter 2006.* The increase in net loss was primarily the result of one-time, $11.4 million favorable impact in the third quarter 2006 associated with the reversal of an accrual for settlement, as well as investment in the company's accelerating growth as the company brought on 92,500 more customers in the third quarter 2007 compared to the same period in 2006. *Interest payments also increased.* Virgin Mobile USA's net income for the first nine months of 2007 increased 138% to $19.2 million, compared to net income of $8.1 million for the same period in 2006.

Virgin Mobile USA is presenting its earnings per share on a pro forma basis to reflect its IPO, which took place after September 30, 2007. *Virgin Mobile USA reported a pro forma diluted loss for the third quarter 2007 of ($0.15) per share, compared to a pro forma loss of ($0.10) per share in the third quarter 2006.* The increase in net loss per share was primarily the result of one-time, $11.4 million favorable impact in the third quarter 2006 associated with the reversal of an accrual for a legal settlement, as well as investment in the company's accelerating growth as Virgin Mobile USA brought on 92,500 more customers in the third quarter 2007 compared to the same period in 2006. Interest payments also increased. Pro forma earnings per share for the first nine months of 2007 was $0.38 per share, compared to $0.16 for the first nine months of 2006.

\* \* \*

*Third quarter 2007 average monthly customer turnover, or churn, remained stable at 4.9% when compared to the third quarter 2006. During the third quarter 2007, Virgin Mobile USA added 45,830 net new customers to its base, compared to 88,386 in the third quarter 2006.* As of September 30, 2007, the company had approximately 4.9 million customers, an increase of 23% over the same period last year. *Churn for the nine months ended September 30, 2007 was 4.9%, up from 4.6% during the same period a year ago, due to a one-time impact of changes made earlier in the year within the company's hybrid offers, as well as normalization of reported churn as the customer base grows.* Virgin Mobile USA added 302,127 net new customers to its base during the first nine months of 2007, an increase of 161% compared to the same period in 2006.  [Emphasis added.]

36.    Also on November 15, 2007, Virgin Mobile held an earnings conference call with investors and financial analysts to discuss its quarterly results.   During this call, Defendants Feehan and Schulman, in relevant part, stated:

> JOHN FEEHAN: While *the nine-month churn rate of 4.9% does reflect an increase over the Q3 2006 reported churn of 4.6%*, this is largely due to two factors. *First, churn in the first half of this year was increased due to a one-time change to our value proposition, which caused approximately 77,000 customers to immediately churn off. The higher churn rate over the first nine months of 2007 reflects the impact of this plan change as well as a normalization of the reported churn number as our customer base grows. For financial year 2007, we expect our churn rate to be approximately 5%, which reflects the underlying base churn rate. And we expect that, over time, our churn will remain in the low to mid 5% range*, reflecting the underlying stable churn rate of our base throughout our operating history.

> \* \* \*

> *Net loss for the quarter was $7.3 million, or $0.15 per share, compared to a loss of $5.1 million, or $0.10 per share, in the third quarter of 2006.* Net income for the first nine months was $18.9 million, or $0.38 per share, up over 100% from net income of $8 million a year ago. Again, our Q3 2006 results included that one-time gain of $11.4 million for the reversal of the accrual for settlement.

> \* \* \*

> DAN SCHULMAN: … Before turning it over to your questions, I'd like to go over our outlook for the current quarter, full year 2007, and 2008. As discussed earlier on the call, we are experiencing both greater demand for our service and some lightening in our traditional prepaid usage trends. *Given the continued weakening of the macroeconomic environment in our country over the past couple of weeks, I think it's prudent to assume that similar macroeconomic conditions will linger throughout 2008. While this does impact our expectations for net service revenues in the current quarter and for the year*, the strength and flexibility of our model allows us to offset this trend through cost efficiencies. And decreases in year-end adjusted EBITDA will be primarily due to anticipated incremental cost per gross add associated with our higher than expected gross adds.

* * *

> [ANALTST]: … But you mentioned that October was weaker than September. Can you give us an idea, just over the last-- It seems like the economy's been dropping off since about August. Have you seen a measurable decrease in performance over the last few months, and has it worsened or improved in the last two weeks in November?
>
> DAN SCHULMAN: No. ***If anything, it's relatively stabilized from there or perhaps slightly improved from there but enough that we want to take the trends that we've seen and put them out.*** But, no. We haven't seen a further decline. [Emphasis added.]

37.    On this news, shares of the Company's stock declined $1.54 per share, or over 10 percent, to close on November 16, 2007 at $9.19 per share, on unusually heavy trading volume. The Company's stock continued to decline following this disclosure, and closed on November 29, 2007 at $7.25 per share, a cumulative loss of $7.75 per share, or over 51 percent of the value of the Company's shares at the time of its IPO just weeks earlier.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Virgin Mobile's common stock pursuant or traceable to the Company's October 11, 2007 IPO through November 15, 2007, and who were damaged thereby (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

39.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Virgin Mobile's common stock was actively traded on the New York Stock Exchange ("NYSE"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery,

Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Virgin Mobile or its transfer agent, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

41.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

42.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Virgin Mobile; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

43.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

44.    The market for Virgin Mobile's common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Virgin Mobile's common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Virgin Mobile's common stock relying upon the integrity of the market price of Virgin Mobile's common stock and market information relating to Virgin Mobile USA, Inc., and have been damaged thereby.

45.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Virgin Mobile's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

46.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Virgin Mobile's financial well-being, business and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Virgin Mobile and its financial well-being, business and operations, thus

causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

47.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

48.    During the Class Period, Plaintiff and the Class purchased common stock of Virgin Mobile at artificially inflated prices and were damaged thereby.  The price of Virgin Mobile's common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

### Applicability of Presumption of Reliance:
### Fraud On The Market Doctrine

49.    At all relevant times, the market for Virgin Mobile's common stock was an efficient market for the following reasons, among others:

(a)    Virgin Mobile stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, Virgin Mobile filed periodic public reports with the SEC and the NYSE;

(c)    Virgin Mobile regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as

communications with the financial press and other similar reporting services; and

(d)     Virgin Mobile was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

50.     As a result of the foregoing, the market for Virgin Mobile's common stock promptly digested current information regarding Virgin Mobile from all publicly-available sources and reflected such information in Virgin Mobile's stock price. Under these circumstances, all purchasers of Virgin Mobile's common stock during the Class Period suffered similar injury through their purchase of the Company's common stock at artificially inflated prices and a presumption of reliance applies.

**<u>NO SAFE HARBOR</u>**

51.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements, because at the time each of those forward-looking statements was made, the particular speaker knew that the particular

forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Virgin Mobile who knew that those statements were false when made.

## FIRST CLAIM
### Violation of Section 11 of
### The Securities Act Against All Defendants

52.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter or the intent of the defendants to defraud Plaintiff or members of the Class.  This count is predicated upon defendants' strict liability for making false and materially misleading statements in the Registration Statement.

53.     This claim is asserted by Plaintiff against all defendants by, and on behalf of, persons who acquired shares of the Company's common stock pursuant to or traceable to the false Registration Statement issued in connection with the Company's October 11, 2007 IPO.

54.     Individual Defendants as signatories of the Registration Statement, as directors and/or officers of Virgin Mobile and controlling persons of the issuer, owed to the holders of the stock obtained through the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement at the time they became effective to ensure that such statements were true and correct, and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading.  Defendants knew, or in the exercise of reasonable care should have known, of the material misstatements and omissions contained in or omitted from the Registration Statement as set forth herein.  As such, defendants are liable to the Class.

55.     Underwriter Defendants owed to the holders of the stock obtained through the

Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading.  Defendants knew, or in the exercise of reasonable care should have known, of the material misstatements and omissions contained in or omitted from the Registration Statement as set forth herein.  As such, defendants are liable to the Class.

56.    None of the defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

57.    Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public which were contained in the Registration Statement, which misrepresented or failed to disclose, *inter alia*, the facts set forth above.  By reason of the conduct herein alleged, each defendant violated and/or controlled a person who violated Section 11 of the Securities Act.

58.    As a direct and proximate result of defendants' acts and omissions in violation of the Securities Act, the market price of Virgin Mobile's common stock sold in the IPO was artificially inflated, and Plaintiff and the Class suffered substantial damage in connection with their ownership of Virgin Mobile's common stock pursuant to the Registration Statement.

59.    Virgin Mobile is the issuer of the stock sold <u>via</u> the Registration Statement.  As issuer of the stock, the Company is strictly liable to Plaintiff and the Class for the material misstatements and omissions therein.

60.     At the times they obtained their shares of Virgin Mobile, Plaintiff and members of the Class did so without knowledge of the facts concerning the misstatements or omissions alleged herein.

61.     This action is brought within one year after discovery of the untrue statements and omissions in and from the Registration Statement which should have been made through the exercise of reasonable diligence, and within three years of the effective date of the Prospectus.

62.     By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from the defendants and each of them, jointly and severally.

**SECOND CLAIM**
**Violation of Section 12(a)(2) of**
**The Securities Act Against All Defendants**

63.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act on behalf of the Class, against all defendants.

65.     Defendants were sellers, offerors, and/or solicitors of purchasers of the shares offered pursuant to the Virgin Mobile Offering Registration Statement.

66.     The Virgin Mobile IPO Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts.  The Individual Defendants' actions of solicitation included participating in the preparation of the false the misleading Registration Statement.

67.     Defendants owed to the purchasers of Virgin Mobile's common stock, including Plaintiff and other members of the Class, the duty to make a reasonable and diligent investigation of the statements contained in the IPO materials, including the Registration Statement, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the IPO materials as set forth above.

68.     Plaintiff and other members of the Class purchased or otherwise acquired Virgin Mobile's common stock pursuant to and/or traceable to the defective Registration Statement. Plaintiff did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Registration Statement.

69.     Plaintiff, individually and representatively, hereby offer to tender to defendants that common stock which Plaintiff and other Class members continue to own, on behalf of all members of the Class who continue to own such common stock, in return for the consideration paid for that common stock together with interest thereon.  Class members who have sold their Virgin Mobile common stock are entitled to rescissory damages.

70.     By reason of the conduct alleged herein, these defendants violated, and/or controlled a person who violated Section 12(a)(2) of the Securities Act.  Accordingly, Plaintiff and members of the Class who hold Virgin Mobile common stock purchased in the IPO have the right to rescind and recover the consideration paid for their Virgin Mobile common stock, and hereby elect to rescind and tender their Virgin Mobile common stock to the defendants sued herein.  Plaintiff and Class members who have sold their Virgin Mobile common stock are entitled to rescissory damages.

71.    This action is brought within three years from the time that the common stock upon which this Count is brought was sold to the public, and within one year from the time when Plaintiff discovered or reasonably could have discovered the facts upon which this Count is based.

## THIRD CLAIM
### Violation of Section 15 of The Securities Act
### Against the Individual Defendants

72.    Plaintiff repeats and realleges each and every allegation contained above, excluding all allegations above that contain facts necessary to prove any elements not required to state a Section 15 claim, including without limitation, scienter.

73.    This count is asserted against Individual Defendants and is based upon Section 15 of the Securities Act.

74.    Individual Defendants, by virtue of their offices, directorship and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Virgin Mobile within the meaning of Section 15 of the Securities Act.   The Individual Defendants had the power and influence and exercised the same to cause Virgin Mobile to engage in the acts described herein.

75.    Individual Defendants' position made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

76.    By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 5, 2007

**BRODSKY & SMITH, LLC**

By:*/s/ Evan J. Smith, Esquire (ES3254)*
Evan J. Smith, Esquire (ES3254)
240 Mineola Boulevard
Mineola, NY 11501
(516) 741-4977
(516) 741-0626 (facsimile)

**SCHIFFRIN BARROWAY**
**TOPAZ & KESSLER, LLP**
Richard A. Maniskas
D. Seamus Kaskela
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056 (fax)

**Attorneys for Plaintiff**